NOT FOR PUBLICATION  CLOSED

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ANTONINA ATRIA, | : | |
|  | : | |
|  Plaintiff, | : | **OPINION** |
|  | : | |
| v. | : | Civ. No. 03-5234 (WHW) |
|  | : | |
| JO ANNE B. BARNHART, | : | |
| Commissioner of Social Security, | : | |
|  | : | |
|  Defendant. | : | |

**Walls, District Judge**

Plaintiff, Antonina Atria, appeals the denial Social Security Disability Insurance benefits ("DIB") by the Administrative Law Judge ("ALJ"). This Court will vacate that decision and remand the case to the ALJ for further proceedings.

## BACKGROUND

**A. Procedural History**

Plaintiff applied for DIB on March 30, 2001. (Trial Record (Tr.) 88-97.) Plaintiff's application for disability benefits was denied at the initial and reconsideration levels. She then filed a request for hearing, which was granted. (Tr. 44-51, 55-59.) A hearing was held on May 28, 2003 before the ALJ. (Tr. 21-41.) The ALJ issued her decision on June 23, 2003, finding the Plaintiff was not disabled and denied benefits. (Tr. 10-18.) Plaintiff requested an Appeal Council review. (Tr. 8.) The Council upheld the ALJ's decision. (Tr. 4-7.) Plaintiff then filed for review by this Court.

NOT FOR PUBLICATION                                                                              CLOSED

**B. Statement of Facts**

Plaintiff was born in Italy on October 22, 1948. She has been in the United States continuously since 1971. (Tr. 25.) She worked as a sewing machine operator for twenty-seven years until November 1999 when the shop she worked in closed. (Tr. 27-29.) She collected unemployment for one year, during which she unsuccessfully sought employment as a sewing machine operator. Plaintiff has not worked since. (Tr. 29.)

Plaintiff lives with and his supported by her husband. (Tr. 33-34.) At home, she cleans the house, does the laundry, and pays the bills. (Id.) She is able to drive a car and shop by herself. (Tr. 26, 34.) She visits family and attends church services. (Tr. 35.) She takes walks around the block. (Id.)

Plaintiff complains of pain in her shoulder and knee that would interfere with her ability to operate a sewing machine. (Plaintiff's Brief ("PB") 3-4.) She also complains of anxiety, pulmonary difficulties, and vision problems. (PB. 4.)

**C. Medical Evidence**

Dr. Sidney Friedman, an internist, examined Plaintiff on February 4, 2000. He diagnosed labile hypertension[1], pain due to arthritis in the right shoulder, chest pain, and depression/anxiety. (Tr. 172-174.)

Dr. I. Ahmad performed an orthopedic examination of Plaintiff on February 7, 2000. (Tr. 156-157.) Plaintiff complained of pain, stiffness, weakness, and insomnia. (Tr. 156.) Dr. Ahmad opined that Plaintiff experienced spasms in the lower back and the range of motion was

---

[1] "Frequently changing levels of elevated blood pressure." Stedman's Medical Dictionary 831 (26th ed. 1995).

**NOT FOR PUBLICATION**                                                                                      **CLOSED**

restricted.  He found very limited restriction in the cervical spine and stated "there were no gross neurological deficit [sic] in the upper extremities.  Deep tendon reflexes were intact." (Tr. 157.) Dr. Ahmad diagnosed spinal strain, arthritis and myositis, and concluded Plaintiff "is totally disabled as a physiological unit."  (Id.)

On  February 8, 2000, Dr. Robert T. Latimer performed a psychiatric examination.  (Tr. 158-160.)  Dr. Latimer found Plaintiff to be pleasant and intelligent and her "memory, orientation, judgment, insight, concentration and attention span was within normal limits.  Her thinking did not reveal any psychotic trends." (Tr. 159.)  However, Dr. Latimer diagnosed Plaintiff with an adjustment disorder of anxiety and depression.  He found the disability severe and the prognosis poor.  (Tr. 160.)  He concluded Plaintiff "is totally and permanently disabled as a psychophysiological working unit."  (Id.)

Plaintiff was examined by Dr. Joel L. Duberstein, an internist, on December 18, 2000. (Tr. 177-82.)  He concluded Plaintiff "show[ed] no evidence of permanent pulmonary disease, dysfunction or disability."  (Tr. 180.)

Dr. Mark Wertenteil performed a consultative examination on January 25, 2001.  (Tr. 183-98.)  He opined that Plaintiff's labile hypertension "does not seem to be of any clinical significance at this point." (Tr. 185.)  He added that Plaintiff's arthritis pain in the shoulder seemed "relatively minor" and "relatively well controlled" with over-the-counter medication and that Plaintiff's major "complaint and problem" was depression/anxiety.  (Id.)

A consultative psychiatric examination was performed by Dr. P. Kurra on January 30, 2001. (Tr. 199-201.)  Plaintiff was diagnosed with generalized anxiety disorder and Dr. Kurra opined that Plaintiff would benefit from anti-depressant medications and psychiatric follow-up.

NOT FOR PUBLICATION                                                          CLOSED

(Tr. 200.)

The record contains a residual functional capacity assessment dated February 28, 2001, but the signature is illegible and no detailed report is attached. (Tr. 202-09.) The assessment concluded Plaintiff could lift and carry up to twenty pounds occasionally and ten pounds frequently. (Tr. 203.) The assessment found no other limitations. (Tr. 204-07.)

I.B. Weitzman, Ph.D, a state agency psychological consultant, completed a psychiatric review technique form on February 26, 2001. (Tr. 210-23.) Dr. Weitzman, through the use of two check-boxes and one paragraph of notes, opined that Plaintiff had an anxiety related disorder, but that it was not severe. (Tr. 210.)

On May 14, 2001, Dr. John Sawicki, D.O. examined the Plaintiff. (Tr. 224-26.) He noted Plaintiff had tenderness and limited motion in the spine as well as tenderness and crepitus[2] in the knees. (Id.) Plaintiff's blood pressure was in the normal range and muscle strength in her back and arms was 5/5. (Id.)

Plaintiff received an MRI on April 12, 2002. (Tr. 230.) Dr. Stephen J. Conte reported that the test revealed disc herniation at C3-C4 and "slight straightening of the ... curvature of the cervical spine suggestive of muscle spasm and cervical myalgia."[3] (Id., emphasis in original.) However, Dr. Conte noted that all other aspects of the spine were normal and that further clinical testing would be necessary to determine if the disc herniation was "significant." (Id.)

Plaintiff was also examined by Dr. Sri Kantha at the Medowlands Pain Management

---

[2]Noise or vibration produced by rubbing or irregular cartilage surfaces together. Stedman's Medical Dictionary 409 (26th ed. 1995).

[3]Muscular pain. Id. at 1161.

NOT FOR PUBLICATION                                                                                          CLOSED

Center on April 12, 2002.  (Tr. 227-30, 232-34.)   Dr. Kantha diagnosed chronic spinal strain and lumbar radiculopathy.[4]

## ANALYSIS

### A.  Standard of Review

This Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).  The district court must affirm the Commissioner's decision if it is "supported by substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Plummer v. Apfel, 186 F.3d 422 (3d Cir. 1999) "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Metro Stevedore Co. v. Rambo, 521 U.S. 121, 149 (1997) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  While substantial evidence must have real probative weight it "may be less than a preponderance."  Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988) (citing Stunkard v. Sec'y of Health & Human Servs., 841 F.2d 57, 59 (3d Cir. 1988)).

"Despite the deference due to administrative decisions in disability benefit cases, 'appellate courts retain a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner]'s decision is not supported by substantial evidence.'"  Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000).  Cursory conclusions unsupported by evidence cannot justify an ALJ's decision.  Id.  "[A] reviewing court may remand a case to the Secretary for good cause, 'where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits.'"  Dobrowolsky v. Califano, 606 F.2d 403, 409 (3d Cir. 1979) (quoting Saldana v. Weinberger, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976)).

---

[4]Disorder of the spinal nerve roots.  Stedman's Medical Dictionary 1484 (26th ed. 1995).

NOT FOR PUBLICATION                                                                        CLOSED

In determining if there is substantial evidence to support the Commissioner's decision, the reviewing court must consider: "(1) objective medical facts; (2) diagnoses and expert opinions of examining physicians; (3) subjective evidence of pain; and (4) the claimant's educational background, work history and age." Snee v. Sec'y of Health & Human Servs., 660 F. Supp 736, 738 (D.N.J. 1987). Accord Balock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972). In order for this Court to properly conduct judicial review and to avoid "judicial usurpation of administrative functions" it must ensure that the "administrative decision . . . [is] accompanied by a clear and satisfactory explanation of the basis on which it rests." Id. Otherwise, remand is appropriate. Cotter v. Roberts, 642 F.2d 700, 705 (3d Cir. 1981).

**B.  Standard of the Commissioner's Determination of Disability**

Disability is defined by the Social Security Act as "inability to engage in any substantial gainful activity by any reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner must follow a five-step sequential process to determine if an applicant is disabled and eligible for Social Security disability benefits. 20 C.F.R.. § 404.1520. The Commissioner must first determine whether or not the claimant is currently engaged in "substantial gainful activity." Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999). "Substantial gainful activity" is defined as "the performance of significant physical or mental duties . . . for remuneration or profit." Chicager v. Califano, 574 F.2d 161, 163 (3d Cir. 1978).

Second, if the claimant is not engaged in "substantial gainful activity" then the ALJ must next determine if the claimant is suffering from a severe impairment. Plummer, 186 F.3d at 428.

NOT FOR PUBLICATION                                                          CLOSED

A severe impairment is defined as "any impairment or combination of impairments which significantly limits the claimant's physical or mental ability to do basic work activities." Barnhart v. Thomas, 124 S. Ct. 376, 379 (2003); 20 C.F.R. §§ 404.1520(c), 416.920(c).

If the claimant's impairments are severe, the ALJ must make a third determination that they are listed in Appendix 1 to subpart P of the regulations or are equivalent to those impairments listed. Plummer, 186 F.3d at 428; 20 C.F.R. § 404.1520. If the impairments are not listed nor equivalent to those listed in the appendix, then the ALJ must make a fourth finding regarding the claimant's "residual functional capacity to perform" his or her "past relevant work." Id. "Residual functional capacity is defined as what a claimant can still do despite his limitations." Burns, 312 F.3d at 119.

If the ALJ holds that the claimant cannot return to his or her "past relevant work" due to the impairments, then the ALJ must determine if there are "other jobs existing in significant numbers in the national economy which the claimant can perform," taking into account his or her educational and work experiences. Plummer, 186 F.3d at 428.

**C. The ALJ's Decision**

The ALJ applied the five step sequential evaluation as required. (Tr. 13-18.) Since Plaintiff had not engaged in substantial gainful activity since November 22, 1999, the ALJ proceeded to step two. (Tr. 13.)

The ALJ considered the medical evidence on the record and made the determination that Plaintiff's back and knee conditions qualify as severe and that Plaintiff's other impairments do not. (Tr. 14.) The ALJ pointed to Dr. Wertenteil's opinion that Plaintiff's labile hypertension was purported to lack clinical significance. (Tr. 14, 185.) The ALJ concluded her cardiac issues

NOT FOR PUBLICATION                                                              CLOSED

and respiratory problems were "borderline" or fell completely in the normal range of function. (Tr. 14.)  The ALJ reached these conclusions by citing to medical evidence in the record.

The ALJ discussed Plaintiff's adjustment disorder.  (Tr. 15.)  The ALJ noted that even though Plaintiff was diagnosed in February 2000, she has never received any treatment and that Dr. Latimer and Dr. Kuna did not report "any specific functional limitations relative to any depression or anxiety experienced by the [Plaintiff]," and the state agency physician found that Plaintiff's adjustment disorder imposed no limitations on her ability to function. (Id.)

In Mason v. Shalala, 994 F. 2d 1058 (3d Cir. 1993), the Third Circuit held that an evaluation form without a thorough written medical report is not substantial evidence.  (Id. at 1065; see Brewster v. Heckler, 786 F. 2d 581, 585 (3d Cir. 1986); Green v. Schweiker, 749 F. 2d 1066, 1071 (3d. Cir. 1984).  In *Mason*, the court specifically criticized the opinions of doctors from state disability determination agencies because of their use of forms using boxes to check off or blanks to fill in.

Here, the ALJ's reliance on the state agency physician's assessment of the Plaintiff was improper.  This form consists of the very check-off-boxes criticized in *Mason*. (Tr. 209-16.) The report consists of a few slashes and a paragraph of scribbled, illegible words.  This certainly does not qualify as a detailed report.  The ALJ's reliance on these findings was improper because it does not reach the level of substantial evidence required by 42 U.S.C. §§ 405(g), 1383(c)(3) and *Plummer*.

The ALJ found that Plaintiff's impairments did not meet or equal the listing of impairments required at stage three of the sequential analysis.  However, the ALJ does not give any specific reasoning at the stage, but simply points to "the medical record of this case."  (Tr.

NOT FOR PUBLICATION                                                                          CLOSED

15.)  Here, the ALJ has committed an error.  The ALJ must set out a specific factual basis for each finding.  Baerga v. Richardson, 500 F.2d 309 (3d Cir. 1974).  Referring to "the record as a whole" has been found insufficient.  Carter v. Apfel, 220 F.Supp.2d 393, 297 (M..D. Pa. 2000)(Kane, J.); see Abshire v. Bowen, 662 F.Supp. 8 (E.D. Pa. 1986)(Pollak, J.).

Continuing on in the sequential evaluation, the ALJ concluded that Plaintiff can return to her past relevant work experience and is not disabled.  The ALJ discussed Plaintiff's testimony and found it not to be credible as "the positive findings in the record tend to suggest [Plaintiff] has a lesser degree of symptoms and a higher degree of functioning than asserted."  (Tr. 15.)  The ALJ does point to specific medical evidence to support the finding.  See; Williams v. Sullivan, 970 F.2d 1178, 1184-85 (3d Cir. 1992); Smith v. Califano, 637 F.2d 968, 972 (3d Cir. 1981.)

The ALJ also points to Plaintiff's daily activities as evidence of her ability to engage in substantial gainful activity.  (Tr. 16.)  The Third Circuit has shown great disfavor in this type of finding, noting "[d]isability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity."  Smith at 971.  See, also; Fargnoli v. Massanari, 861 F.3d 34 (3d Cir. 2001); Frankenfield v. Bowen, 861 F.2d 405 (3d Cir. 1988).  Again, the ALJ has relied on evidence that does not qualify as substantial.

Because the ALJ did not consider the final step of the sequential analysis, this Court cannot determine what the ALJ would have concluded if he had completed the analysis.

## CONCLUSION

For the foregoing reasons, the ALJ's decision is vacated and the remanded to the ALJ for further proceedings consistant with this opinion.

                                                                                    s/ William H. Walls, U.S.D.J.

**NOT FOR PUBLICATION**                                                              **CLOSED**

**Appearances**

Joel M. Solow
Freeman & Bass, P.A.
24 Commerce St.
Newark, NJ 07102

Barbara L. Spivak
Tomasina DiDrigoli
Office of the General Counsel
Social Security Administration